**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| MARTA HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:11-cv-1967-M |
| | § | |
| LASKO PRODUCTS, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment, filed by Defendant Lasko

Products, Inc. ("Lasko") on July 13, 2012 [Docket Entry #25].  For the reasons stated below, the

Motion is **GRANTED in part** and **DENIED in part**.

I.  BACKGROUND

This action arises from an injury sustained by Plaintiff Marta Hernandez ("Hernandez")

on November 18, 2009, in Lasko's Fort Worth factory.  (Pl.'s First Am. Compl. 3.)   Hernandez

worked on Lasko's assembly line from 1994 to 1999, and again from 2002 until she was injured

on the job on November 18, 2009.  (Def.'s App. 2, 21, 34.)  Throughout her tenure with Lasko,

Hernandez, who primarily speaks and reads Spanish, utilized interpreters to help her understand

documents she was required to sign.  (Def.'s App. 38, 40–41.)

Hernandez alleges her injury occurred when a metal tool fell and struck her on the head

as she worked on an assembly line below.  (Pl.'s First Am. Compl. 3)  Following the incident,

Hernandez was taken to a first aid room within the factory, where a Lasko employee trained in

first aid cleaned her wound.  (Def.'s App. 2, 21, 34.)  An ambulance arrived to transport

Hernandez to a hospital or clinic, but she declined the service, preferring to leave with her

husband.  (Def.'s App. 2, 20–21, 33–34; Pl.'s App. 1.)  However, Lasko employees did not let

Hernandez leave with her husband.  (Def.'s App. 2, 21, 34; Pl.'s App. 1.)  Instead, per Lasko's

policy, Hernandez was transported to a clinic by a Lasko employee, John Evans.   (Def.'s App. 2,

21, 34; Pl.'s App. 1.)

At the clinic, Dr. John Diamond diagnosed Hernandez with a cerebral concussion, with

loss of consciousness, and open scalp wounds.  (Def.'s App. 134–37.)  The next day, Dr.

Diamond saw Hernandez again and released her to return to work.  (Def.'s App. 134–37.)

Four days later, on November 23, 2009, Hernandez returned to the Lasko plant, where

she completed an Employee Injury Statement and other documents.   (Def.'s App. 138.)

Hernandez's bilingual son translated the documents for Hernandez.  (Def.'s App. 40–41, 45–46.)

Also on November 23, 2009, Lasko's Human Resources Director, Phyllis Buckelew

("Buckelew"), presented Hernandez with English and Spanish language versions of Lasko's

"Post Injury Acceptance and Waiver" (the "Waiver").  (Def.'s App. 181; Pl.'s Resp. 7.)  The

Waiver provided that Hernandez relinquished "any rights [she] . . . may have to sue" the

company "in exchange for being able to participate in [Lasko's] Voluntary Injury Benefit Plan"

(the "Injury Benefit Plan").  (Def.'s App. 32; Pl.'s App. 6.)  After speaking with Maria Espinosa

("Espinosa"), Lasko's Human Resources Clerk, in Spanish, Hernandez declined to execute the

Waiver.  (Def.'s App. 2–3, 21, 29–30; Pl.'s App. 4.)   Nevertheless, Hernandez took the Spanish

and English language versions of the Waiver home with her.  (Def.'s App. 29.)  On December

11, 2009, Hernandez signed the Spanish language version of the Waiver.  (Def.'s App. 21, 30.)

On August 9, 2011, Hernandez brought this suit.  (Pl.'s Orig. Compl.)  Lasko moves for

summary judgment, asserting the Waiver bars this action and, in the alternative, that Hernandez

failed to produce sufficient evidence on her claim of false imprisonment[1] and that the doctrine of

res ipsa loquitur does not apply to Hernandez's claim.  (Def.'s Mot. 1.)  Hernandez, in turn,

claims that the Waiver is invalid (1) for failure to comply with statutory regulations, (2) for lack

of consideration, and (3) because Lasko acquired Hernandez's consent by fraud.  (Pl.'s Resp. 8–

12.)  She continues to assert her claim for false imprisonment, but her response is silent on the

issue of res ipsa loquitur.  (Pl.'s Resp. 12–13.)

## II.  LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  If a reasonable jury could return a verdict for the non-moving party, then there is a

genuine dispute of material fact.  *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d

404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The

moving party bears the initial burden of identifying those portions of the record that demonstrate

the absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.,* 140 F.3d 622, 625 (5th Cir. 1998).  Once the

movant carries its initial burden, the burden shifts to the nonmovant to show that summary

judgment is inappropriate, by designating specific facts beyond the pleadings that prove the

existence of a genuine dispute of material fact.  *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at

250; *Fields v. City of S. Houston, Tex.*, 922 F.2d 1183, 1187 (5th Cir. 1991).  In determining

whether a genuine dispute of material fact exists, "factual controversies are construed in the light

---

[1] In her First Amended Complaint, Hernandez asserted a claim for "wrongful imprisonment." (Pl.'s First Am. Compl. 6–7.)  A claim for wrongful imprisonment lies only for a plaintiff suing the state for improper incarceration.  *State v. Young*, 265 S.W.3d 697, 699 (Tex. App.—Austin 2008, pet. denied).  From her pleadings, it is clear that Hernandez intended to assert a claim for *false* imprisonment.  Lasko treats it as such, as does Hernandez in her Response.  (Def.'s Mot. 11; Pl.'s Resp. 12.)  The Court will do the same.

most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch Props.*, 140 F.3d at 625 (citation omitted).

### III.   ANALYSIS

#### A.  Waiver

Waiver is an affirmative defense, and the party alleging waiver has the burden of proof. *Sanchez v. Prop. & Cas., Ins. Co. of Hartford*, No. H-09-1736, 2010 U.S. Dist. LEXIS 6295, at *10 (S.D. Tex. Jan. 27, 2010); *JM Walker LLC v. Acadia Ins. Co.*, 356 Fed. Appx. 744, 748 (5th Cir. 2009).  Although Lasko bears the ultimate burden of proof on this issue, the burden of production shifts to Hernandez if Lasko makes a prima facie showing that there is no genuine dispute as to the facts underpinning the defense.

1.   Texas Labor Code § 406.033

A waiver purporting to release an employer from liability for an accident sustained by an employee on the job must comply with the requirements of Texas Labor Code §§ 406.033(f) and (g).  Subsection (f) provides that an employee can waive such causes of action only if:

> (1) the employee voluntarily enters into the waiver with knowledge of the waiver's effect;
> (2) the waiver is entered into not earlier than the 10th business day after the date of the initial report of injury;
> (3) the employee, before signing the waiver, has received a medical evaluation from a nonemergency care doctor; and
> (4) the waiver is in a writing under which the true intent of the parties is specifically stated in the document.

Tex. Lab. Code § 406.033(f).

Additionally, "[t]he waiver provisions under Subsection (f) must be conspicuous and appear on the face of the agreement." Tex. Lab. Code § 406.033(g).  Waiver provisions are "conspicuous" within the meaning of the statute if they "appear in type larger than the type contained in the body of the agreement or in contrasting colors." *Id.*

a.   Texas Labor Code § 406.033(f)(1)

An employee who signs a waiver has presumptive knowledge of its contents and effect under Texas Labor Code § 406.033(f)(1).  *Lopez v. The Garbage Man, Inc.*, No.12-08-00384-CV, 2011 Tex. App. LEXIS 2342, at *52–3 (Tex. App.—Tyler 2011, no pet.).  In *Lopez*, an employee originally refused to sign a post-injury waiver.  *Id.* at *2.  After negotiations, and in the presence of a Spanish language interpreter who "sought to assure that [the employee] understood the terms of the agreement," Lopez signed an English language version of the waiver.  That waiver stated that the signer knew "the contents" of the waiver and was "aware of [its] consequences."  *Id.* at *53.  The *Lopez* court concluded that a person who signs a contract "is presumed as a matter of law to have read and understood the contract unless he was prevented from doing so by trick or artifice."  *Id.* at *22, 53 (citing *Tamez v. SW Motor Transp., Inc.*, 155 S.W.3d 564 (Tex. App.—San Antonio 2004, no pet.)).[2]  Thus, the court presumed the waiver to be valid as a matter of law, and affirmed summary judgment for the defendant.  *Id.* at *53.

Here, the undisputed summary judgment evidence is as follows:  Hernandez received the Waiver on November 23, 2009.  (Def.'s App. 2, 21.)  She refused to sign it when it was

---

[2] *But see Blackshire v. Tyson Foods, Inc.*, No. 2:09-CV-329-TJW, 2010 U.S. Dist. LEXIS 8237, at *12–13 (E.D. Tex. Aug. 17, 2010).  In *Blackshire*, the court held that because "no Texas court has addressed the scope of the language in § 406.033(f)(1) . . . [its requirements] supersede[] the general, common law presumption in Texas that one who has the capacity to enter into a contract is held to know what words were used in the contract, to know their meaning, and to understand their legal effect."  *Id.* at *12.  Since the district court decided *Blackshire* in 2010, however, a Texas appellate court has addressed the relevant statutory language.  *Lopez*, 2011 Tex. App. LEXIS 2342, at *12–13, 20, 53.  The *Lopez* court specifically determined that under § 406.033(f)(1), as at common law, one who signs a contract "is presumed as a matter of law to have read and understood the contract."  *Id.* at *20, 53.  Although this Court is not bound by either decision, it adopts the reasoning of the Texas appellate court in *Lopez*.  The *Blackshire* court premised its conclusion on the absence of any Texas authority.  *Lopez* has since filled that void.  This Court finds *Lopez* to be persuasive, and predicts that the Texas Supreme Court would affirm its reasoning.

presented, but she took Spanish and English versions of it home with her.  (Def.'s App. 3, 21,
30.)  In the following weeks, Hernandez discussed the Waiver, in Spanish, with Jose Sanchez
("Sanchez"), a supervisor and Spanish language interpreter at Lasko.  (Def.'s App. 29–30.)  On
December 11, 2009, Hernandez signed the Spanish language version of the Waiver, in the
presence of three Lasko employees, including Sanchez.  (Def.'s App. 1–3, 27, 29–30, 33–47.)

Unlike the contract in *Lopez*, the Waiver did not expressly state that the signer
understood its contents and consequences, nor does the summary judgment record contain
evidence that anyone "sought to assure" that Hernandez understood the Waiver's terms.  (Def.'s
App. 32.)  However, here, in contrast to *Lopez*, the Waiver Hernandez signed was in Spanish, a
language in which Hernandez is indisputably literate.  (Def.'s App. 31.)  Moreover, Hernandez
had the Waiver at home with her for several weeks before she signed it, and she had discussed it,
in Spanish, with a bilingual supervisor in whose presence she ultimately signed it.  Thus, based
on the summary judgment evidence, the Court finds, as a matter of undisputed fact, that
Hernandez voluntarily signed the Waiver, understanding its contents and consequences.

b.   Texas Labor Code § 406.033(f)(2)

It is not disputed that Hernandez signed the Waiver more than ten business days after her
November 9, 2009 injury, thereby satisfying subsection (f)(2).  (Def.'s App. 1, 20, 31; Pl.'s App.
1; Pl.'s First Am. Compl. 3.)

c.   Texas Labor Code § 406.033(f)(3)

Lasko points to no evidence that Hernandez's treating physician, Dr. Diamond, is a
"nonemergency care doctor" as defined by subsection (f)(3).  Lasko asserts that Hernandez
received both "emergency and nonemergency medical evaluations" before signing the Waiver,
but its arguments address the character of the *treatment* Hernandez received, rather than the

nature of Dr. Diamond's professional training.  (Def.'s Mot. 9.)  Nevertheless, at least one Texas appellate court has concluded that a showing that an employee "spent eight days in [a] hospital following [his] accident and was seen by a doctor after his release from the hospital" satisfied subsection (f)(3).  *Lopez*, 2011 Tex. App. LEXIS 2342, at *54.  Here, Hernandez visited Dr. Diamond six times before signing the Waiver, including four times after Dr. Diamond cleared her for work on November 19, 2009.  (Def.'s App. 126–78.)  Given those visits, the Court concludes that in treating Hernandez, Dr. Diamond served, at least at times, as a "nonemergency care" doctor.[3]  Thus, the Waiver satisfied subsection (f)(3).

d.  Texas Labor Code § 406.033(f)(4)

Finally, the Waiver is in writing and specifically states the parties' intent, as required by § 406.033(f)(4).  The Waiver provides, in relevant part:

I UNDERSTAND I AM GIVING UP THE RIGHT TO SUE LASKO PRODUCTS, INC. AND OTHERS FOR NEGLIGENCE BECAUSE OF MY INJURY.

\*\*\*

I AM GIVING UP ANY RIGHTS I OR ANY FAMILY MEMEBER [sic] MAY HAVE TO SUE . . . THE COMPANY . . .  IN EXCHANGE FOR BEING ABLE TO PARTICIPATE IN THE VOLUNTARY INJURY BENEFIT PLAN.

(Def.'s App. 32.)  This is a clear manifestation of the parties' intent.

Thus, Lasko has made a prima facie showing that the Waiver satisfies the requirements of § 406.033.  The burden of production thus shifts to Hernandez to provide evidence that creates a genuine dispute of material fact as to the Waiver's validity.  In an attempt to satisfy this burden, Hernandez makes three arguments: (1) the Waiver does not comply with § 406.033(g); (2) Hernandez did not receive adequate consideration for releasing her claims; and (3) her consent was procured by fraud.

---

[3] Hernandez does not dispute this characterization in her response.

2.   Texas Labor Code § 406.033(g)

Hernandez argues that the Waiver is void because it does not expressly include, in a conspicuous writing, all the provisions of subsection (f).  (Pl.'s Resp. 9–10.)  This argument misconstrues the requirements of subsection (g).  Waivers need not include a verbatim recitation of all four subsection (f) provisions.  Subsection (g) merely provides that the "waiver provisions" required by subsection (f) must be conspicuous.  Waiver provisions are "conspicuous" within the meaning of the statute if they "appear in type larger than the type contained in the body of the agreement or in contrasting colors."  TEX. LAB. CODE § 406.033(g).

The Waiver in this case is comprised of only four paragraphs.  (Def.'s App. 32.) Paragraphs two and four, set out on the preceding page, reflect the parties' intent, are capitalized, and appear in larger font than the rest of the Waiver.  (Def.'s App. 32.)  On the basis of the summary judgment evidence, no reasonable juror could find that the Waiver violates Texas Labor Code § 406.033(g).

3.   Valid Consideration

Hernandez argues that "every Lasko employee is automatically enrolled in the Lasko Voluntary Injury Benefit Plan" and, therefore, that Lasko gave no consideration in exchange for Hernandez's release.  (Def.'s App. 10–11.)   Under Texas law, all contracts must be supported by consideration.  *Goins v. Ryan's Family Steakhouses, Inc.*, 181 Fed.Appx. 435, 437 (5th Cir. 2006).  Valid consideration is a "bargained for exchange or promises" which "may take the form of [either] 'a benefit to the promisor or a detriment to the promisee.'"  *Id.* (citing *Roark v. Stallworth Oil & Gas*, 813 S.W.2d 492, 496 (Tex. 1991)).

Hernandez has raised a genuine issue of material fact as to the validity of the consideration in this case, and consequently, to the enforceability of the Waiver.  Lasko's Human

Resources Clerk, Maria Espinosa ("Espinosa") affirmed in her deposition testimony[4] that "every employee [is] automatically enrolled in the employee injury benefit plan by virtue of working for Lasko," and that Hernandez would have "receive[d] the same care and benefits under the employee injury benefit plan if she did not sign the waiver."  (Pl.'s App. 10–11.)

Lasko disputes that Hernandez was already enrolled in the Injury Benefit Plan before signing the Waiver, and argues that Hernandez mischaracterizes Espinosa's testimony.  In support, Lasko offers Espinosa's declaration, in which she states she had "no role in determining whether an employee was eligible to participate in Lasko's Voluntary Injury Benefit Plan," and indeed, had "no knowledge as to whether an employee, who refused to execute the . . . [Waiver], would be eligible to participate in" the Injury Benefit Plan.  (Def.'s App. 179–80.)  Moreover, Buckelew, Lasko's Human Resources Manager, declared that Lasko offered a health benefit plan "separate and apart from Lasko's Voluntary Injury Benefit Plan," but that "to participate in the Voluntary Injury Benefit Plan, an employee needed to execute a Post Injury Acceptance and Waiver."  (Def.'s App. 181–82.)

In deciding summary judgment, the Court's role is not to weigh the relative strength of inconsistent evidence.  Espinosa's contradictory testimony may reduce the probative value of Hernandez's evidence, but it does not eradicate any genuine dispute of material fact.  Consequently, Hernandez has established that the validity of Lasko's consideration is a factual question for the jury to determine.

---

[4] Lasko claims that Espinosa did not sign her deposition, and in fact, the summary judgment record does not include evidence that she did.  Nonetheless, Lasko does not seem to dispute the authenticity of the Espinosa deposition testimony presented by Hernandez; Lasko simply questions its significance. The Court considers the deposition, despite the fact that it is unsigned, as it has been given no evidence that it does not accurately reflect Espinosa's sworn testimony.

4.   Fraudulent Inducement

Hernandez's final defense to enforcement of the Waiver is that Lasko procured her

consent through fraud.  (Pl.'s Resp. 11–12.)  Under Texas law, the elements of fraud are:

> (1) that a material representation was made; (2) the representation was
> false; (3) when the representation was made, the speaker knew it was false
> or made it recklessly without any knowledge of the truth and as a positive
> assertion; (4) the speaker made the representation with the intent that the
> other party should act upon it; (5) the party acted in reliance on the
> representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).

a.   Material and False Representation

There are two representations at issue.  First, in her sworn affidavit, Hernandez claims

she "was told that [she] had to sign the company waiver to be able to go and continue to see the

doctors by Jose Sanchez."  (Pls.' App. 1.)  Second, Espinosa testified that she told Hernandez

that "any medical care that she needed to obtain or received will be paid as long as she signed . . .

the post injury waiver."  (Pls. App. 10.)

Lasko does not dispute that these representations, if made, were material; it simply relies

on its previous assertion that those representations were not false.  However, Hernandez has

raised a genuine question of fact as to whether her entitlement to paid medical care hinged on her

signing the Waiver.  Thus, it cannot be said, as matter of law, that the representations made by

Sanchez and Espinosa were not false.

b.   Knowledge of the Statement's Falsity

Hernandez makes no argument as to Sanchez's knowledge that the statement attributed

to him was false, but she does provide evidence that Espinosa knew the alleged representations

she made were untrue.  In response to the deposition question, "Is it your understanding that

[Hernandez] would receive the same benefits under the employee injury benefit plan if she did

not sign the waiver?", Espinosa responded "[s]he will receive the same care."  (Pl.'s App. 11.)

Though the precise meaning of this response is unclear, it at least establishes a question of fact

regarding Espinosa's knowledge of the falsity of the statements attributed to her.  As to Sanchez,

the Court concludes that knowledge can be determined by the jury from the circumstances.

      c.   Intent

Hernandez offers no direct evidence of either speaker's intent when they allegedly uttered

the statements in question.  Nevertheless, the question of intent is "uniquely within the realm" of

the jury as it "so depends on the credibility of the witnesses and the weight to be given to their

testimony."  *Jones v. Ray Ins. Agency*, 59 S.W.3d 739, 753–54 (Tex. App.—Corpus Christi

2001, pet. denied) (citing *Benoit v. Wilson*, 150 Tex. 273, 281 (1951)).  Therefore, intent presents

a fact question for the jury.

      d.   Reliance and injury

Finally, Hernandez has raised a material issue of fact as to both reliance and injury.  In

her affidavit, Hernandez states directly that she "relied on" Sanchez's representations when

deciding to sign the Waiver.  Lasko offers no evidence to the contrary.  The alleged injury is the

lost right of Hernandez to seek legal redress for her injuries.

Hernandez has established a material issue of fact as to the elements of a fraud claim, and

a second basis upon which a jury may find the Waiver to be unenforceable.  Therefore, Lasko's

Motion for Summary Judgment based on the affirmative defense of waiver is **DENIED**.

B.  False Imprisonment

Herandez alleges that Lasko falsely imprisoned her by confining her in the plant's first

aid room, refusing to allow her to leave with her husband, and forcing her to travel to a medical

clinic with a Lasko employee.  (Pl.'s First Am. Compl. 3, 6–7; Pl.'s Resp. 7, 12–13.)

The undisputed summary judgment evidence establishes the following:  Shortly after Hernandez sustained her injury, two employees transported her on a gurney to a cot in Lasko's first aid room, which measures approximately 140 square feet and has two entry doors.  (Def.'s App. 1, 20, 33; Pl.'s Resp. 6.)  Espinosa, who is trained in the administration of first aid, applied peroxide and a gauze pad to Hernandez's head wound.  (Def.'s App. 2, 20, 33.)  Eunice Gutierrez ("Gutierrez"), a Lasko employee, asked Hernandez if she wanted Lasko to contact Hernadez's husband, Castor Hernandez ("Castor"), and Hernandez said that she did.  (Def.'s App. 33.)  After Gutierrez called Castor, but before he arrived, an ambulance arrived at the plant. (Def.'s App. 2, 20, 33.)  Hernandez indicated that she did not want to ride in the ambulance, and that she desired to leave with Castor.  (Def.'s App. 2, 20, 33.)  Kristi Ngo, a Lasko employee, told Hernandez that she could not ride with Castor, and explained that Lasko company policy required Hernandez to be transported to the clinic by a designated Lasko employee (Def.'s App. 2, 20–1, 34; Pl.'s App 1, 11.)   Shortly thereafter, Lasko employee John Evans transported Hernandez to a medical clinic.  (Def.'s App. 2, 20–1, 34; Pl.'s App 1, 11.)

"The essential elements of false imprisonment are (1) willful detention, (2) without consent and (3) without authority of law."  *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982). "Willful detention may be accomplished by violence, threats, or any other means that restrains a person from moving from one place to another." *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 645 (Tex. 1995).  When the alleged detention is accomplished by threat, "the plaintiff must demonstrate that the threat was such as would inspire in the threatened person a just fear of injury to her person, reputation, or property."  *Id.*  Threat of future action does not, by itself, constitute willful detention.  *Morales v Lee*, 668 S.W.2d 867, 874 (Tex. App.—San Antonio 1984, no writ).  However, courts may "examine the relative age, size, sex and physical

demeanor of the participants to determine whether such threats are sufficient to overcome the plaintiff's free will." *Oramalu v. Washington Mutual Bank*, 699 F. Supp. 2d 898, 911 (S.D. Tex. 2009) (citing *Fojtik v. Charter Medical Corp.*, 985 S.W.2d 625, 629 (Tex. App.—Corpus Christi 1999, pet. denied)).

Here, the fundamental question is whether Lasko "willfully detained" Hernandez, for the purposes of false imprisonment, by refusing to allow her to leave with her husband and by requiring her to travel to the clinic with a Lasko employee. The record does not reveal any means by which Lasko prevented Hernandez from leaving with her husband except to tell her that she could not do so, or the manner in which Lasko "forced" her to go to the clinic with a Lasko employee. Indeed, there is no evidence that Lasko physically restrained Hernandez, threatened to do so, or that Lasko employees threatened any other action such as calling the police or firing Hernandez if she refused to obey. Hernandez states she was told it would be "illegal" for her to leave with her husband and that "fear of criminal penalties or losing [her] job" compelled her to comply with Lasko's policy. (Pl.'s App. 1.) But the appropriate inquiry is not whether Hernandez in fact feared for her job or her liberty, but whether such fear was "just." *Randall's Food Mkts.*, 891 S.W.2d at 645.

In *Oramalu*, a bank employee was detained and questioned by the bank's security specialist. 699 F. Supp. 2d at 901. The bank did not use, or threaten to use, physical force to detain the employee, Oramalu. No one handcuffed him, or guarded the door, and Oramalu never asked to leave. According to Oramalu, the bank accused him of theft, told him the police were coming, and that he could not leave the bank. Moreover, bank employees allegedly "told [Oramalu] that he was going to suffer in prison and described how men are raped there," and questioned him for eight hours. On these facts, the district court determined that Oramalu had

established a "material fact issue" as to the willful detention element of false imprisonment. *Id.* at 911.

Similarly, in *Black v. Kroger Co.*, a Texas appellate court found that a jury could reasonably conclude that an employee had been willfully detained for the purposes of false imprisonment where an employer questioned the employee in a loud voice, and threatened her with incarceration if she did not confess. 527 S.W.2d 794 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ dism'd).

In contrast, in *Safeway Stores, Inc. v. Amburn*, 388 S.W.2d 443 (Tex. Civ. App.—Fort Worth 1965, no writ), and *Fotjik v. Charter Medical Corp.*, 985 S.W.2d 625, 631 (Tex. App.—Corpus Christi 1999, pet. denied), two Texas appellate courts upheld summary judgments against claims of false imprisonment, determining that threats by the defendant to call the police did not create a fact issue of whether the plaintiffs had a justifiable fear of injury to their persons, reputations, or property. In *Fotjik*, the plaintiff had also requested, and been denied, a pass to leave the hospital where he was being treated for alcoholism. 985 S.W.2d at 628–29.

Notably, all of the cases described above involved explicit threats of incarceration, or at least calling the police. Hernandez has alleged no such threat. Neither *Fojitk* nor *Oramalu* supports the proposition that merely being told one cannot leave, absent a threat of some kind, establishes an issue of fact as to willful detention. Indeed, in *Fojitk*, even the combination of being denied the ability to leave *and* being threatened with arrest did not suffice. *Fojtik*, 985 S.W.2d at 628–29. The principle that emerges from these cases is that a person cannot be willfully detained without a physical restraint, threat of restraint, or a threat of any kind. Hernandez offered no evidence that Lasko made any such threat, and has therefore raised no material issue of fact as to willful detention, one of the necessary elements of a false

imprisonment claim.  Thus, Lasko's Motion for Summary Judgment on Hernandez's claim of false imprisonment is **GRANTED**.

C.  Res Ipsa Loquitur

Lasko argues that by pleading specific acts of negligence, Hernandez cannot rely on the doctrine of res ipsa loquitur.  (Def.'s Mot. 13–15.)

Res ipsa loquitur is a doctrine of evidence whereby negligence may be inferred if "(1) the character of the accident" indicates that "in the absence of negligence, it would not have occurred, and (2) the thing which caused the injury is shown to be under the management and control of the alleged wrongdoer."  *Honea v. Coca Cola Bottling Co.*, 143 Tex. 272 (1944).

Under Texas law, "plead[ing] specific acts of negligence" does not "prevent[] [a plaintiff] from relying on the res ipsa loquitur theory," so long as that plaintiff pleads such specific acts in the alternative to general allegations of negligence.  *Coastal Coaches v. Ball*, 234 S.W.2d 474, 477 (Tex. Civ. App.–Beaumont 1950, writ ref'd n.r.e.); *see also Mobil Chemical Co. v. Bell*, 517 S.W.2d 245 (Tex. 1974); *Texas Pipe Bending Co. v. Gibbs*, 580 S.W.2d 41, 45 (Tex. Civ. App.–Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Honea*, 143 Tex. 272.  Some Texas courts have also held that a plaintiff who does not plead in a manner that notifies the defendant that the res ipsa loquitur will be invoked waives the doctrine.  *Honea*, 143 Tex. 272; *Gibbs*, 580 S.W.2d at 45.  The authorities that Lasko cites, *Saffold v. Kroger Tex.*, L.P., No. 4:10-CV-961-A, 2011 WL 4907378 (N.D. Tex. Oct. 14, 2011) and *Kelly v. American Airlines*, 372 F. Supp. 1214 (N.D. Tex. 1974), do not hold otherwise.

In *Saffold*, a plaintiff asserted claims for premises liability, negligence, and alleged application of the doctrine of res ipsa loquitur.  *Saffold*, 2011 WL 4907378 at *1.  The court determined that by granting summary judgment on the claims of premises liability and general

negligence, it had precluded the applicability of res ipsa loquitur.  *Id.* at *3.  This case does *not* stand for the proposition, as Lasko insists, that "[a] plaintiff cannot assert res ipsa loquitur to bolster a negligence claim."  (Def.'s Mot. 14.)

In *Kelly*, the court refused to apply res ipsa loquitur only because the plaintiff could not establish one of the predicates to the doctrine.  372 F. Supp. at 1215–16.  That is, "res ipsa loquitur [was] not applicable because the circumstances of . . . [this case did] not lead logically to an inference of negligence on the part of the [defendant]; there [were] too many other equally efficacious explanations for such occurrences."  *Id.* at 1216.

Here, Hernandez has alternatively plead both specific acts of negligence and general negligence, and has explicitly notified Lasko, in her pleadings, that she will invoke the doctrine of res ipsa loquitur.  Lasko has pointed to no convincing reason why, as a matter of fact or law, Hernandez should be precluded from relying on this evidentiary doctrine.  Thus, Lasko's Motion for Summary Judgment on the applicability of res ipsa loquitur is **DENIED**.

## IV.   CONCLUSION

Lasko's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. Hernandez has raised a genuine issue of material fact regarding the validity of the Waiver, specifically, whether Lasko gave consideration or procured Hernandez's consent by fraud. Hernandez has not made a sufficient showing to present the question of false imprisonment to a jury.  Hernandez is not precluded from invoking the doctrine of res ipsa loquitur.

**SO ORDERED**.

October 5, 2012.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**